**Stephen P. WELSH, Plaintiff,**

**v.**

**GTE SERVICE CORPORATION, Defendant.**

Civ. A. No. 1:93–CV–904–FMH.

United States District Court,
N.D.Georgia,
Atlanta Division.

Sept. 16, 1994.

Anthony James McGinley, Atlanta, GA, for plaintiff.

Edward Lloyd Sutter, Leticia Alfonso, Atlanta, GA, Robert N. Eccles and Karen Wahle, Washington, DC, for defendant.

*ORDER*

HULL, District Judge.

This matter is before the Court on Defendant's Motion for Summary Judgment [17–1] and Plaintiff's Cross–Motion for Summary Judgment [21–1].[1] Both parties agree that the material facts are undisputed and the case may be decided as a matter of law.

## I. *FACTUAL BACKGROUND*

Plaintiff Welsh brings this action under the Employee Retirement Income Security Act of 1974 (ERISA), 29 U.S.C. § 1001, *et seq.*, specifically §§ 1132(a)(1)(A) and (B). Count One of Plaintiff's Complaint seeks declaratory relief that Plaintiff is entitled to benefits under Contel's 1982 Senior Executive Supplemental Income Plan. Count Two seeks recovery of an administrative penalty of $100 per day pursuant to 29 U.S.C. § 1132(c), due to Defendant's failure to respond to a written request for information.

In 1973, Plaintiff Welsh began working for Continental Telecom, Inc. ("Contel"). In 1982, Contel established a Senior Executive Supplemental Income Plan (the "1982 SIP"). This SIP provided pension income supplemental to that offered through any other company pension plans. Benefits under the 1982 SIP were computed based on the number of years a participant worked at Contel after the age of 40.

In 1984, Plaintiff Welsh was promoted to Vice President for Network Design. In September of 1984, Contel informed Plaintiff that he was eligible to participate in the 1982 SIP. Plaintiff was furnished a copy of the SIP and told he must elect whether to participate, since participation would place certain obligations upon Plaintiff.

Article IV of the 1982 SIP contained a Change in Control of Management provision, which provided that if Plaintiff was terminated within 18 months of a change in control of management, Plaintiff's retirement benefits

---

1. Defendant points out that Plaintiff's Cross–Motion for Summary Judgment is untimely, having been filed on February 24, 1994, more than 20 days after the close of discovery on January 6, 1994. However, in the interest of judicial econo-

my, since both parties agree that the facts in this case are undisputed and that the issues may be resolved as a matter of law, the Court, in its discretion, will consider Plaintiff's Cross–Motion for Summary Judgment.

would be calculated as if Plaintiff's employment had continued until age 55, as follows:

> If a Participant's employment terminates within eighteen (18) months following a Change in Control of the Management of Continental for any reason other than (i) Termination for Cause or (ii) voluntary resignation prior to age fifty-five (55), the Participant shall be eligible to receive Supplemental Income Payments hereunder whether or not he otherwise meets the service requirements for Early Retirement or Normal Retirement and his termination of Company employment shall be treated as described in Article III(2)(ii) except that for purposes of calculating the Supplemental Income Payments in such a case it shall be assumed that the Participant's employment continued to age fifty-five (55) at the level of compensation which was earned by him in the twelve (12) consecutive calendar months immediately prior to the termination of his employment or in the twelve (12) months immediately preceding the Change in Control whichever is the greater amount. Basic Retirement Benefits of such a participant shall be determined without regard to the assumption described in the preceding sentence.

Article IV, ¶ 4.

Article VI of the 1982 SIP imposed a "Non-Competition" restriction, as follows:

> Non-Competition. Each Participant agrees that at all times during his employment with the Company and for a period of three years after termination of the Participant's employment with the Company he will refrain from becoming associated with, engaging in any business or rendering services to any business competitive to any of the Company's businesses without first obtaining the written approval of the Company. Any such action by a Participant shall result in termination of all of his rights to payment thereafter coming due hereunder.

Article VI, ¶ 2.

On September 7, 1984, Plaintiff Welsh applied for participation in the 1982 SIP.

Because Plaintiff was only 36 at the time he became a Plan participant in the 1982 SIP, he did not accrue benefits until he turned 40 on June 2, 1988. In 1985, the Board of Directors of Contel amended the 1982 SIP and approved the Contel Senior Executive Supplemental Income Plan As Amended and Restated November 7, 1985 (the "1985 SIP"). The 1985 SIP did not have a provision similar to the Change in Control provision of the 1982 SIP. The 1985 SIP specifically removed the Change in Control provision. However, the 1985 SIP did contain a "Non-Competition" provision similar to the 1982 SIP. Plaintiff was not given an option to accept or reject participation in the 1985 SIP and did not learn of the 1985 Amendment until 1991.

On June 2, 1988, Plaintiff Welsh turned 40. At this time he became eligible to accrue benefits under the SIP.

On March 14, 1991, Contel merged with GTE Corporation and Plaintiff Welsh's job was eliminated effective August 30, 1991. Both parties agree that the GTE merger constituted a "Change in Control" as contemplated in the SIP.

On August 25, 1991, Plaintiff then requested an estimate of his benefits under the SIP and learned of the 1985 Amendment and the deletion of the Change in Control provision. Under the provisions of the 1985 SIP, Plaintiff (1) would receive no benefits under the former Change of Control provision because it was deleted in the 1985 Amendment; (2) would receive no SIP benefits if he chose to begin receiving benefits at age 60 because these SIP benefits would be totally offset by his regular pension benefits; and, (3) would receive $193.64 a month in SIP benefits if he chose to start receiving benefits at age 55. In the summer of 1991, Plaintiff requested and was furnished a copy of the 1985 SIP.

In September, 1991, after Plaintiff was terminated, Plaintiff requested permission to seek other employment without regard to the restrictions in Article VI of both SIPs. Defendant denied Plaintiff's request.

On November 10, 1992, Plaintiff's attorney wrote the Director of Qualified and Executive Benefits for GTE requesting certain information relating to the Contel SIP. GTE did not send Plaintiff the requested information.

## II. DISCUSSION OF LAW

The issues in this case are (1) in Count One, whether Plaintiff is entitled to have his benefits calculated under the provisions of the 1982 or the 1985 SIP and (2) in Count Two, whether Plaintiff is entitled to recover a penalty under 29 U.S.C. § 1132(c) due to Defendant's failure to furnish Plaintiff information relevant to the Contel SIP.

### A. Count One

Defendant contends that Plaintiff's benefits should be calculated under the 1985 SIP, which was the plan in effect when Plaintiff's claim for benefits was made. According to Defendant, the validly amended and restated 1985 SIP supersedes and modifies the 1982 SIP.

Plaintiff Welsh claims (1) that the 1985 SIP did not supersede, terminate or modify the benefits provided to Plaintiff as a Plan participant under the terms of the 1982 SIP; (2) that Plaintiff was never a "participant" as defined by the terms of the 1985 SIP and, (3) that Plaintiff can show "prejudice" and "reliance" due to Contel's unilateral modification of the 1982 SIP and failure to notify Plaintiff of the change in provisions, entitling Plaintiff to substantive relief.

### 1. The 1985 SIP validly amended, modified and superseded the 1982 SIP

■ ERISA, by its express terms, permits modifications of employee benefit plans, as follows:

§ 1102. Establishment of plan

. . . .

(b) Requisite features of plan

Every employee benefit plan shall—

. . . .

(3) provide a procedure for amending such plan, and for identifying the persons who have authority to amend the plan . . .

29 U.S.C. 1102(b)(3).

In addition, the Eleventh Circuit has held that ERISA does not prohibit a company from eliminating previously offered benefits that are neither vested nor accrued. *Phillips v. Amoco Oil Co.*, 799 F.2d 1464, 1471 (11th Cir.1986), *cert. denied*, 481 U.S. 1016, 107 S.Ct. 1893, 95 L.Ed.2d 500 (1987); *Wise v. El Paso Natural Gas Co.*, 986 F.2d 929, 935 (5th Cir.), *cert. denied*, —— U.S. ——, 114 S.Ct. 196, 126 L.Ed.2d 154 (1993).

The terms of Contel's 1982 SIP anticipated, and provided for, amendment as follows:

> Continental may at any time amend, alter, modify or terminate this Plan; provided, however, that any such action shall not adversely affect the rights of any Participant under this Plan accrued hereunder prior to the date of any such action.

1982 Version of Plan Document, Article V, ¶ 1. The Plan itself did not contain any notification requirements.

In 1985, at the time of the amendment in question, Plaintiff was 36 years old. Plaintiff would not begin to accrue benefits under the Plan until he was 40 years old. Because Plaintiff had no accrued benefits at the time of the 1985 amendment deleting the Change in Control provision, Defendant contends that the 1985 amendment was valid as to Plaintiff.

The Court finds that the 1985 SIP was a valid modification of the 1982 SIP under both ERISA and the terms of the Plan itself. At the time of the 1985 amendment, Plaintiff had no accrued benefits in the 1982 SIP which he could have lost. The computation for SIP benefits was based on years of "service," which is defined as years after a participant's 40th birthday. *See* 1982 Version of Plan Document, Article II, ¶ 16.[2] Because Plaintiff was only 37 at the time of the 1985 amendment, his "service" period had not begun and he had no accrued benefits under the 1982 SIP. The 1985 amendment was valid as to Plaintiff in that it did not adversely affect any rights that had accrued to him at the time. *Phillips*, 799 F.2d at 1471; *Wise*, 986 F.2d at 935. There is no evidence of bad faith or other invalidity.

---

2. The Plan provision reads:
"Service" shall mean the latest period of the Participant's uninterrupted employment with the Company whether or not while a Partici-

pant, commencing on the Participant's 40th birthdate and ending on the date of termination of his employment with the Company.

## 2. Plaintiff was a "Participant" as defined by the terms of the 1985 SIP

■ Plaintiff also contends that he is not covered by the 1985 SIP because he never elected to participate or rejected participation in the 1985 SIP. Plaintiff contends that he is still covered by the 1982 SIP because the 1985 SIP does not state that it supersedes, revokes or cancels any prior plan. Plaintiff alleges that the 1985 SIP is silent as to the status of participants in prior plans who do not elect to participate in the 1985 SIP. Plaintiff cites the 1988 amendment as an example of an amendment that created two categories of participants—participants under both the old and new provisions of the plan.

To support this theory, Plaintiff argues that the 1985 SIP defines "Participant" as:

Any person who was a Participant in the Plan prior to its amendment and restatement as of November 7, 1985, ... who is approved as a Participant by the Committee, and who executes and submits to the Company an Application.

(Plaintiff's Brief, p. 11.)

Therefore, Plaintiff contends that an employee does not commence participation until he (1) has been selected by the Committee as a participant, and (2) has elected to participate in the Plan by submitting an application to the Company.

However, Plaintiff's Brief does not quote the full definition of "participant" as it occurs in the 1985 amendment. The full definition reads:

2.11 "Participant" shall mean any person who was a Participant in the Plan prior to its amendment and restatement as of November 7, 1985, and any other key management employee who is recommended for participation in the Plan by Contel's Chief Executive Officer, who is approved as a Participant by the Committee, and who executes and submits to the Company an Application.

The complete definition of "participant" in the 1985 SIP has two categories of participants: (1) anyone who was a Participant in the Plan prior to its amendment, and (2) any new Participant recommended for participation, who is approved and executes and submits an application. The Court agrees with the Defendant that the last phrases in the definition (i.e., who is approved ... and who executes and submits) modify only the new participants, and not existing participants prior to the amendment. By its own terms, the 1985 SIP includes all prior participants in the 1982 SIP, and thus the 1985 SIP superseded and replaced earlier plans.

Defendant also cites a portion of the 1985 amendment which specifically excludes one group of participants from a determination of benefits under the 1985 amendment and restatement as suggesting that all other participants not specifically excluded would be subject to the amendment.[3]

In sum, the Court finds that Plaintiff was a "participant" as defined by the 1985 Amendment (i.e. any person who was a participant in the plan prior to its amendment and restatement as of November 7, 1985), and as such automatically came under the terms of the 1985 amendment, and is therefore not eligible for benefits under the 1982 SIP.

## 3. Contel's failure to notify Plaintiff of the 1985 Amendment does not create a substantive remedy under the facts and circumstances here

Alternatively, Plaintiff contends that this is not a typical unilateral benefits plan. Plaintiff stresses that the 1982 SIP was a bilateral contract, where Plaintiff agreed to the covenant not to compete and received benefits under the Plan. Plaintiff alleges that he never received notice of the 1985 amendment, that Plaintiff relied on the change in control provisions in the 1982 SIP, and that Defendant unilaterally modified the Plan, to Plaintiff's substantial prejudice. According to Plaintiff, while Plaintiff was still bound by

3. The section referred to provides as follows: "The amount and terms of payment of any benefit with respect to each employee entitled to participate in the plan who retired, died or terminated employment with Contel or any of its subsidiaries prior to November 7, 1985, shall be

determined in accordance with the terms and conditions of the Plan without regard to this amendment and restatement". (Article I, ¶ 3, CONTEL SENIOR EXECUTIVE SUPPLEMENTAL INCOME PLAN As Amended and Restated November 7, 1985).

the non-competition provisions, Plaintiff's benefits were significantly altered by deletion of the change in control provision. As a result of lack of notice, Plaintiff seems to argue that the Court should create a substantive remedy for the Plaintiff and allow the Plaintiff to recover the "change in control" benefits under the 1982 SIP.

ERISA does require notification, to plan participants, about a modification or change in the Plan, not later than 210 days after the end of the plan year, as follows:

> If there is a modification or change described in section 1022(a)(1) of this title, a summary description of such modification or change shall be furnished not later than 210 days after the end of the plan year in which the change is adopted to each participant, and to each beneficiary who is receiving benefits under the plan.

29 U.S.C. § 1024(b)(1). The parties agree that the Plaintiff did not have notice of the 1985 Amendment. The dispute here is over what remedy ERISA permits, or the Court should create, for Defendant's failure to give notice.

▆ The first place to look is ERISA itself. ERISA contains a civil enforcement provision which allows participants to sue for benefits under the Plan, as follows:

> A civil action may be brought—
>
> (1) by a participant or beneficiary—
>
> . . . .
>
> (B) to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan; . . . .

29 U.S.C. § 1132(a)(1)(B).

Plaintiff requests the Court to order the Defendant to grant benefits under the 1982 SIP. However, as outlined above, the 1985 amendment is valid as to Plaintiff under ERISA, and Plaintiff is a participant in the 1985 SIP. Under the terms of Section 1132(a)(1)(B), Plaintiff can sue to recover only benefits due under the terms of the 1985 SIP. Since Plaintiff did not accrue any "change in control" benefits under the 1985 SIP to enforce, the express terms of ERISA

itself do not provide the remedy requested by Plaintiff.

▆ Alternatively, ERISA also provides for civil penalties for failing to provide a participant with a copy of the plan upon request, as follows:

> (c) Administrator's refusal to supply requested information
>
> Any administrator who fails or refuses to comply with a request for any information which such administrator is required by this subchapter to furnish to a participant or beneficiary (unless such failure or refusal results from matters reasonably beyond the control of the administrator) by mailing the materials requested to the last known address of the requesting participant or beneficiary within 30 days after such request may in the court's discretion be personally liable to such participant or beneficiary in the amount of up to $100 a day from the date of such failure or refusal, and the court may in its discretion order such other relief as it deems proper.

29 U.S.C. § 1132(c). Therefore, in cases of reporting and disclosure violations, "an aggrieved participant must sue under Section 502(a)(1)(A) for the relief provided in Section 502(c)." *Hozier v. Midwest Fasteners, Inc.,* 908 F.2d 1155, 1167 (3rd Cir.1990). Section 502(c), in turn, makes an administrator personally liable to the participant for no more than $100 per day or for such other relief as the court deems proper. *Hozier,* 908 F.2d at 1167. In addition, liability cannot be imposed under Section 502(c) unless and until a participant requests information from the administrator and the administrator fails to comply within 30 days. *Id.*

Plaintiff Welsh does not dispute that Contel provided him with a copy of the 1985 SIP as soon as he requested it. Therefore, Plaintiff does not request relief under Section 502(c) in Count One.

▆ Rather, Plaintiff seems to request a judicially created remedy. Plaintiff contends that he is entitled to bring suit under Section 1132(a)(1)(B) for the substantive relief of benefits under the 1982 SIP and that the Court itself may award such benefits because

Plaintiff was not given notice of the 1985 Amendment.

The Eleventh Circuit addressed the issue of substantive relief for procedural violations under ERISA in *Harris v. Pullman Standard, Inc.,* 809 F.2d 1495 (11th Cir.1987). The Court held that Pullman's interpretation of its benefits policy was arbitrary and capricious as a matter of law and affirmed the district court's granting of summary judgment to plaintiffs. In discussing whether procedural violations under ERISA entitled plaintiffs to substantive relief, the Court cited *Blau v. Del Monte Corporation,* 748 F.2d 1348 (9th Cir.1984) for the proposition that violations of ERISA's procedural requirements ordinarily do not entitle plaintiffs to substantive relief. *Harris,* 809 F.2d at 1499. The Eleventh Circuit went on to say that "the quantity of an employer's procedural violations may work a substantive harm." *Id.* In *Harris,* the Court found that the employer ignored the clear wording of the benefits policy and refused to award severance pay to employees who were entitled to receive it under the policy. *Id.* This and the "unavailability of the policy for the great number of the employees and the complete lack of any formal claims procedure in addition to Pullman's interpretation of its policy prove that Pullman has acted arbitrarily and in bad faith when interpreting and implementing its policy." *Id.* at 1499. The issue in this case is not one of arbitrariness and bad faith due to a refusal to provide benefits under a policy or of numerous procedural violations and failure to provide any copy of the Plan at all but, simply a failure to give notice of one amendment to one benefit plan. Therefore, *Harris* is not particularly on point. In *Harris,* the employer flagrantly disregarded and refused to abide by the clear language of the benefit plan. In the instant case, the employer failed to provide an employee with personal notice of an amendment to a benefit plan.

While there is no pertinent Eleventh Circuit decision on this issue, the Fifth Circuit has held that an amendment to a welfare benefit plan is valid despite a beneficiary's lack of personal notice, unless the beneficiary can show (1) active concealment of the amendment, (2) significant reliance upon, or (3) possible prejudice from the lack of notice. *Wise v. El Paso Natural Gas Co.,* 986 F.2d 929, 936 (5th Cir.), *cert. denied,* —— U.S. ——, 114 S.Ct. 196, 126 L.Ed.2d 154 (1993); *Pierce v. Security Trust Life Insurance Co.,* 979 F.2d 23, 30 (4th Cir.1992) (plan participant must show reliance and prejudice in order to recover for an employer's failure to comply with ERISA's statutory requirements).

The Court does not find, nor does Plaintiff Welsh contend, that Contel actively concealed the 1985 amendment. Therefore, the issue is whether Plaintiff can show prejudice and reliance resulting from lack of notice of the 1985 amendment sufficient to warrant departing from the remedies prescribed under ERISA and allow Plaintiff the substantive relief he has requested.

Plaintiff contends that since his participation in the plan was premised upon his agreement not to compete following termination, Plaintiff is able to show sufficient "reliance" and "prejudice" resulting from lack of notice of the modification so as to invalidate the amendment as to Plaintiff. Plaintiff no longer has the benefits promised under the Change in Control provision, yet he is unable to freely seek employment because he is still bound by the three year non-compete section.

Defendant states that Plaintiff was not prejudiced by Defendant's failure to notify him of the 1985 Amendment because Plaintiff's only options in 1985 would have been to remain with the company without the benefit of the accelerated accrual provisions upon change in control, or to leave the company and lose the benefits of the entire Plan. Defendant states that neither option would have given Plaintiff the benefits he now demands.

However, there is another alternative that Plaintiff could have chosen had he been informed of the 1985 Amendment. Plaintiff could have elected not to participate in the 1985 SIP and he would therefore not have been bound by the non-compete clause. The prejudice to Plaintiff by not having been informed of the 1985 Amendment is not that he lost the benefits of the change in control

provision because, whether he was informed or not, he would have lost those benefits. Because Plaintiff was not yet 40 in 1985 and his benefits had not accrued, this was a valid amendment allowed under ERISA and allowed under the terms of the 1982 SIP. Instead, the prejudice to Plaintiff is that he is now bound by the non-compete clause when he could have elected not to participate in the 1985 SIP had he known of the 1985 Amendment deleting the change in control provision.

In this case, Plaintiff is not claiming that he should not be bound by the non-compete clause and is not asking the Court to declare that provision invalid as to Plaintiff as a participant in the 1985 SIP. Plaintiff was terminated on August 30, 1991. That three year non-compete clause has expired already. Instead, Plaintiff is claiming that he should be allowed to recover benefits under the 1982 SIP, specifically under the change in control clause of the 1982 SIP. Plaintiff cites no case law in support of this proposition.

In response, Defendant has cited numerous cases which support, directly or by analogy, Defendant's position that Plaintiff is not entitled to the relief requested. In *Hozier v. Midwest Fasteners, Inc.*, 908 F.2d 1155 (3d Cir.1990), the Third Circuit found that Congress had chosen to limit the remedies available to participants for their employer's reporting and disclosure violations under ERISA. *Hozier*, 908 F.2d at 1170. The Court held:

> To the extent plaintiffs seek redress for defendants' reporting and disclosure violations as such, they should have sought the remedies available to them under section 502(a)(1)(A). We decline to use section 502(a)(1)(B) as a device to undercut the

limitations built into section 502(a)(1)(A),....

*Id.*

Likewise, in a case very analogous to the facts here, *Godwin v. Sun Life Assurance Co. of Canada*, 980 F.2d 323 (5th Cir.1992), the plaintiff argued that a plan amendment allowing an offset for old age Social Security benefits did not apply to him because he was given no notice of the amendment. The Fifth Circuit held that the amendment was valid despite lack of notice since there was no evidence of active concealment or significant reliance or possible prejudice due to the lack of notice. *Id.* at 328. *See also Henne Corp. v. Allis–Chalmers Corp.*, 660 F.Supp. 1464, 1474–75 (E.D.Wis.1987) (Court would not rule amendment invalid due to employer's failure to notify plan participants and beneficiaries of amendment, because employer did not actively conceal amendment or refuse to let participants have a copy of amendment).[4]

Similarly, in *Kreutzer v. A.O. Smith Corporation*, 951 F.2d 739 (7th Cir.1991), the employer not only did not provide participants with five-year and ten-year plan summaries but also did not make the necessary filings with the Secretary of Labor. The employer also failed to include the new revision in copies of the Handbook which were distributed to participants. The Seventh Circuit held that since there was no evidence that the employer acted in bad faith or otherwise attempted to conceal the policy, plaintiffs were not entitled to have their benefits calculated under the old revision. *Kreutzer*, 951 F.2d at 743.

One court has found the required level of prejudice or reliance in a claim based on lack

---

**4.** Other District Courts also have refused to invalidate a plan amendment for lack of notice, absent a showing of bad faith, reliance or prejudice. *See e.g., O'Hearn v. P*I*E* Nationwide, Inc.*, 9 Employee Benefits Cas. (BNA) 2691 (M.D.Fla.1988) (lack of notification of plan amendment "does not provide grounds for denying enforcement of the terms of the plan document" absent significant reliance upon, or possible prejudice from, the defendant's transgressions); *Whittemore v. Schlumberger Tech. Corp.*, 1992 U.S. Dist. LEXIS 9394, *8–9 (S.D.Tex. Mar. 26, 1992) (lack of notice of plan amendment does not render amendment ineffective); *Heil v. Mid-

*west Operating Engineers Health & Welfare Fund*, 1993 WL 226303, *5, 1993 U.S. Dist. LEXIS 8588, *13 (N.D.Ill. June 24, 1993) ("an amendment to a Plan is valid despite a beneficiary's lack of personal notice, unless the beneficiary can show active concealment by the Plan or some significant reliance upon or possible prejudice flowing from the lack of notice"); *Rubin v. Decision Concepts, Inc.*, 566 F.Supp. 1057, 1058–59 (S.D.N.Y.1983) (failure of defendant to comply with requirements regarding notification of amendments does not give rise to a cause of action in favor of the plaintiff because no reliance or prejudice shown).

of notice of plan changes. The Seventh Circuit did grant substantive relief for failure to notify adequately a plan participant of a preretirement husband-and-wife pension plan. In this case, a wife did not receive her benefits under the husband's pension plan after his death because the husband did not receive adequate notice of the need to elect these benefits. *Kaszuk v. Bakery and Confectionery Union,* 791 F.2d 548, 552–53 (7th Cir.1986). Notice of the possibility of the election was essential for the spouse to receive accrued benefits. In contrast, at the time of the 1985 Amendment, Plaintiff had no accrued benefits.

The Supreme Court declined to imply a cause of action under ERISA for extra-contractual damages caused by improper or untimely processing of benefit claims in *Massachusetts Mutual Life Insurance Co. v. Russell,* 473 U.S. 134, 147–48, 105 S.Ct. 3085, 3093, 87 L.Ed.2d 96 (1985). The Court stated:

> We are reluctant to tamper with an enforcement scheme crafted with such evident care as the one in ERISA.... Where a statute expressly provides a particular remedy or remedies, a court must be chary of reading others into it. ... The presumption that a remedy was deliberately omitted from a statute is strongest when Congress has enacted a comprehensive legislative scheme including an integrated system of procedures for enforcement.

*Massachusetts,* 473 U.S. at 147, 105 S.Ct. at 3093 (citations omitted).

Since any alleged failure of Defendant to comply with the ERISA reporting and disclosure requirements has not resulted in a loss of accrued benefits to Plaintiff, the Court does not find that Plaintiff has been prejudiced sufficiently to warrant the judicially created remedy of awarding benefits under the 1982 SIP.

Since the Court has already found that Defendant was entitled to amend the 1982 SIP so as to eliminate benefits under the change in control provision and this amendment was valid as to Plaintiff in that it did not eliminate any benefits that had accrued to him at the time, Plaintiff cannot argue that

because he did not elect to participate in the 1985 SIP, he is entitled to benefits under the 1982 SIP. At most, Plaintiff can claim that he should not be bound by the provisions of the 1985 SIP, which is a claim Plaintiff does not make.

For the reasons stated above, the Court GRANTS summary judgment to Defendant on Count One of Plaintiff's Complaint.

## B. *COUNT TWO*

In Count Two of his Complaint, Plaintiff Welsh states that on November 10, 1992, Plaintiff's counsel requested copies of pertinent plan documents, summary plan descriptions, summary reports, information concerning denial of Plaintiff's claim for benefits under the 1982 SIP, and information on administratively appealing the decision to deny Plaintiff's claim for benefits. Plaintiff contends that the information requested is information which an administrator is required to furnish plan participants under ERISA, specifically 29 U.S.C. §§ 1021–1025 and 1133. Plaintiff claims that because Defendant refused to furnish this information, Defendant is liable for a penalty of up to $100 a day pursuant to 29 U.S.C. § 1132(c).

Defendant does not dispute that it failed to send any of the requested information to Plaintiff. Defendant states, however, that it did comply with 29 C.F.R. § 2520.104–23 (1975), an alternative method of complying with the reporting and disclosure requirements of Part 1 of Title I of ERISA for unfunded or insured pension plans maintained by an employer for a select group of management or highly compensated employees. The regulation provides that an employer can comply with disclosure requirements by filing certain statements with the Secretary of Labor, as follows:

> Alternative method of compliance for pension plans for certain selected employees.
>
> . . . .
>
> (b) Filing obligation. Under the authority of section 110 of the Act, an alternative form of compliance with the reporting and disclosure requirements of Part 1 of the Act is provided for certain pension plans for a select group of management or highly

compensated employees. The administrator of a pension plan described in paragraph (d) shall be deemed to satisfy the reporting and disclosure provisions of part 1 of title 1 of the Act by—

(1) Filing a statement with the Secretary of Labor that includes the name and address of the employer, the employer identification number (EIN) assigned by the Internal Revenue Service, a declaration that the employer maintains a plan or plans primarily for the purpose of providing deferred compensation for a select group of management or highly compensated employees, and a statement of the number of employees in each. . . .

29 C.F.R. § 2520.104–23(b)(1). Plaintiff does not dispute that Defendant may use this provision to satisfy its reporting and disclosure requirements under ERISA. However, Plaintiff contends that Defendant has the burden to prove that it complied "fully" with this alternative method, and Defendant has not done so.

The Third Circuit in *Barrowclough v. Kidder Peabody & Co., Inc.,* 752 F.2d 923 (3rd Cir.1985), *overruled on other grounds* by *Pritzker v. Merrill Lynch, Pierce, Fenner & Smith, Inc.,* 7 F.3d 1110 (3rd Cir.1993), held that the administrative exemption under 29 C.F.R. § 2520.104–23 provided plans a safe harbor under ERISA, but "that the administrative exemption is applicable only if the regulation had been complied with." *Barrowclough,* 752 F.2d at 941. Plaintiff states that Defendant has not complied with the terms of the regulation.[5] Under this regulation, Defendant was required to file a statement with the Secretary of Labor which specified the number of plans which are subject to the regulation and the number of employees in each plan. Defendant submitted a document to the Secretary of Labor which listed 13 different pension plans providing deferred compensation for management or highly compensated employees. The second plan on the list of 13 is "Contel Corporation Senior Executive Supplemental Income Plan (SIP)," with a "participant

count" of 56. Plaintiff contends that, in reality, there was more than one SIP, with 13 participants covered by the November 1988 version, and 43 participants covered under the pre–1988 version of the SIP.

The Court does not find that because Defendant did not break down the number of participants under each *version* or *amendment* to the SIP, that Defendant has failed to satisfy the requirement to specify the number of plans and participants in each.

The regulation states that the employer shall file a statement with the Secretary of Labor which contains "a declaration that the employer maintains a plan or plans primarily for the purpose of providing deferred compensation for a select group of management or highly compensated employees, and a statement of the number of employees in each." Contel submitted a list of 13 plans which fit the above description. The Contel Corporation Senior Executive Supplemental Income Plan (SIP), which is the basis for this suit, was one of the plans submitted. Plaintiff introduces no evidence showing that Defendant was required to do more than include this plan on the list. Nowhere does it state in 29 C.F.R. § 2520.104–23(b)(1) that the Plan Administrator must list each plan and every amendment to those plans and the number of employees covered under each of the amendments.

The Court finds that Defendant has carried its burden to show that it complied with the requirements of the alternative method of compliance under C.F.R. § 2520.104–23(b)(1). Therefore, enforcement of Section 502(c) is foreclosed to Plaintiff. For this and the reasons stated above, the Court GRANTS summary judgment to Defendant as to Count Two of Plaintiff's Complaint.

## III. *CONCLUSION*

For the reasons discussed above, the Court hereby **GRANTS** Defendant's Motion for Summary Judgment [17–1] and **DENIES**

---

**5.** Plaintiff's brief cites *Barrowclough* for the proposition that "defendant has the burden to prove that it complied *fully* with the alternative method of compliance" (emphasis added). How-

ever, the Court in *Barrowclough* simply states that "the burden of proof to show compliance with the alternative method was on Kidder Peabody". *Barrowclough,* 752 F.2d at 932.

Plaintiff's Cross–Motion for Summary Judgment [21–1].

IT IS HEREBY ORDERED.