**Paul E. DALL, Plaintiff,**

v.

**THE CHINET COMPANY, et al., Defendants.**

**No. CIV. 97–48–P–C.**

United States District Court, D. Maine.

Nov. 23, 1998.

Jeffrey Neil Young, McTeague, Higbee, MacAdam, Case, Watson & Cohen, Topsham, ME, for Plaintiff.

William J. Kayatta, Jr., Pierce Atwood, Portland, ME, for Defendants.

## MEMORANDUM OF DECISION AND ORDER

GENE CARTER, District Judge.

Plaintiff Paul E. Dall, a former employee at The Chinet Company, has moved pursuant to Fed.R.Civ.P. 56 for summary judgment on Counts V and VI of his Second Amended Complaint. Defendants Chinet, The Chinet Company Salaried Employees' Retirement Plan, and Group Insurance for Employees of The Chinet Company[1] have filed a cross motion for partial summary judgment on Count VI.[2]

---

1. The Court will refer to all Defendants collectively as Chinet or Defendants.

2. Prior to any responsive pleading, Dall amended his original complaint to add Count VI. Count VI alleges that Chinet breached its fiduciary duty under the Employee Retirement Income Security Act ("ERISA") by amending the plan in a manner which was detrimental to Plaintiff. First Amended Complaint (Docket No. 14) at 11. On March 19, 1998, both Chinet and Dall moved for summary judgment on the ERISA claims (Counts V and VI). Defendants' Motion for Summary Judgment (Docket No. 17); Plaintiff's Motion for Summary Judgment (Docket Nos. 20, 21). On April 13, 1998, in order to obviate the need for the Court to review several sets of pleadings and memoranda, Defendants withdrew their Motion

## BACKGROUND

The following undisputed material facts are taken from Plaintiff's Statement of Material Facts Not in Dispute ("Plaintiff's Statement of Material Facts") and the exhibits attached thereto, Defendants' Statement of Material Facts In Opposition to Plaintiff's Motion for Summary Judgment ("Defendants' Statement of Material Facts"), and Plaintiff's Response to Defendants' Statement of Material Facts. The facts are largely not in dispute as they are documented in written communications between the parties. These communications are attached as exhibits to Plaintiff's Statement of Material Facts.

Dall was formerly employed as a Manager of Materials and Product Technology at Keyes Fibre Company's (now Chinet's) Waterville manufacturing facility. Due to a corporate downsizing, Dall was terminated on May 6, 1994, at age fifty two after working for Chinet and participating in The Chinet Company Corporate Salaried Employee's Retirement Plan ("the Plan") for twenty-eight years. Plaintiff's Motion for Summary Judgment at 1–2; Defendants' Statement of Material Facts (Docket No. 32) at ¶¶ 1–4.

In 1992, 1993, and 1994, Chinet amended its benefits plan to provide early retirement opportunities to designated employees as part of its corporate downsizing effort. In each year, the company offered increased medical benefits and gap payments to be paid until the retiring employee qualified for social security. Plaintiff's Statement of Material Facts (Docket No. 22), Exhibit 21 ("the Amended Plan") at §§ 5.4, 5.5, 5.6. The 1992 benefits were originally offered to Waterville plant employees who were aged sixty and over and who had worked for the company for at least fifteen years. *Id.* § 5.4. Accord-

ing to the Amended Plan, however, these benefits ultimately were not limited to Waterville employees and were offered to all Chinet employees who qualified. *Id.* The 1993 and 1994 early retirement benefits were offered to employees aged fifty five and older who had worked for the company for fifteen years. *Id.* §§ 5.5, 5.6. The Plan was also amended in 1993 with a new retirement benefit formula. Plaintiff's Statement of Material Facts, Exhibit 3. Chinet employed Hewitt Associates to prepare summaries of the modifications made to the Plan in 1993. Defendants' Statement of Material Facts ¶ 11. These brochures are entitled, *Your Retirement Benefits . . . A Better Balance* and the *1993 Early Retirement Window.* Plaintiff's Statement of Material Facts, Exhibits 4, 7.

The first four counts of Plaintiff's Complaint in this action alleged that Chinet violated the Age Discrimination in Employment Act, 29 U.S.C. § 621 et seq. ("the ADEA") and the Maine Human Rights Act, 5 M.R.S.A § 4572 et seq. ("the MHRA"), by offering enhanced early retirement benefits only to persons who were age fifty-five or older and otherwise qualified. Defendants' Statement of Material Facts ¶ 8. This Court affirmed the Recommended Decision of the Magistrate Judge granting Defendants' Motion to Dismiss all the age discrimination claims on October 6, 1997. Order Affirming the Recommended Decision of the Magistrate Judge (Docket No. 11).

The remaining two claims—Counts V and VI—allege violations of ERISA's disclosure requirements and fiduciary obligations.[3] These are the substance of Counts V and VI. According to the record, Dall made several requests, starting in 1993, for modifications that were made to the Plan in years 1992,

for Summary Judgment. Defendants' Withdrawal of Their Motion for Summary Judgment (Docket No. 29). Chinet subsequently responded to Plaintiff's Motion for Summary Judgment on April 14, 1998 (Docket No. 31), and Dall submitted a reply on April 24, 1998 (Docket No. 35).

After careful analysis of Dall's summary judgment motion, this Court issued an order noting that the series of violations of Chinet's fiduciary obligations argued in Plaintiff's legal memorandum were not based upon the allegations contained in his First Amended Complaint. The Court ordered Dall to file a motion for leave to

amend the Amended Complaint if he planned to base his motion for summary judgment on the apparently unrelated alleged violations of fiduciary duty. Order to Amend Complaint (Docket No. 41). On July 1, 1998, Dall filed his Second Amended Complaint after this Court granted him leave. Second Amendment Complaint (Docket No. 49). Chinet subsequently filed a Motion for Summary Judgment on Count VI. Defendants' Motion for Summary Judgment (Docket No. 53).

3. These potential violations were revealed in the discovery process.

1993, and 1994. In early 1993, Dall wrote Chinet requesting copies of "all plan documents filed with the U.S. Department of Labor." Plaintiff's Statement of Material Facts, Exhibit 1. In response, Chinet supplied Dall with a copy of the Plan effective January 1, 1987 (the "1987 Plan"). *Id.* ¶ 2, Exhibit 2; Defendants' Statement of Material Facts ¶ 9(a). Chinet did not enclose *summaries of any modifications made to the plan since 1987. Id.*

On April 6, 1993, Chinet informed all employees, including Dall, that its board of directors had approved a number of amendments to the Plan and that all employees would soon be receiving information about the changes. Plaintiff's Statement of Material Facts, Exhibit 3. As promised, Chinet distributed to all employees a second letter describing changes made to the Plan that would become effective on June 1, 1993. *Id.* at Exhibit 4. Chinet explained that the 1993 amendments were described in the enclosed brochure, *Your Retirement Benefits ... A Better Balance. Id.* It is undisputed that Dall received a copy of this brochure. *Id.* ¶ 5; Defendants' Statement of Material Facts (Docket No. 37) ¶ 13.

The parties disagree whether Chinet's letter of April 6 disclosed to employees that the Plan had also been amended to provide an early retirement opportunity to employees age fifty five or older with fifteen or more years of service. Plaintiff's Reply to Defendants' Statement of Material Facts at 2–3; Defendants' Statement of Material Facts ¶¶ 9(b), 12. In plain language, the letter advises,

> "[y]ou will be hearing more about a voluntary retirement opportunity for salaried employees who are eligible to retire in 1993 (age 55 or older with at least 15 years of service). Employees electing to retire within a certain period in 1993 will receive the improved benefits from the Retirement Plan and the Retiree Medical Plan in effect before June 1, 1993. If eligible, you will receive additional information about this opportunity in your package."

Plaintiff's Statement of Material Facts, Exhibit 3. Furthermore, the *Your Retirement Benfits ... A Better Balance* brochure, which all employees received, notes on the front page that for those employees eligible to retire in 1993, "the company is offering a unique retirement opportunity." *Id.* at Exhibit 5. Hence, this Court finds that Chinet informed its employees of the existence of the 1993 early retirement opportunity and told them that they would receive more information if eligible. It is further undisputed that Chinet distributed information regarding the 1993 early retirement plan to the eligible employees later that month. *Id.* ¶ 7. Dall was not an eligible employee.

After receiving the *Your Retirement Benefits ...A Better Balance* brochure in May, Dall requested in writing what he termed the "Retirement Plan Amendment Report." Plaintiff's Statement of Material Facts, Exhibits 8, 9, 10. Dall did not specifically request information regarding the amendments made to the Plan in particular years, despite the fact that the April 6, 1993, letter from Chinet advised him of the existence of particular amendments made in 1993. *Id.* In response to his inquiry, Chinet informed Dall, first by phone and then by mail, that such a report did not exist and that there was no requirement for the plan administrator to file such a report with the Department of Labor. *Id.* at Exhibit 10. Chinet explicitly told Dall that the brochure, *Your Retirement Benefits ... A Better Balance,* which Dall had already received, was the summary of material modifications required by the Department of Labor to be distributed to employees. *Id.*

Dall made no further requests until almost a year later when, on April 14, 1994, after Dall's employment was terminated, Dall wrote Chinet and complained that he still had not been provided with updated information that included modifications to the Plan adopted in 1993. *Id.* at Exhibit 12. Dall also inquired whether a rumor that pension plan money had been transferred to a medical benefits account was true. *Id.* Chinet promptly informed Dall that no such transfer had occurred or had ever been contemplated. *Id.* at Exhibit 13. Dall wrote Chinet three more times. He requested the latest annual report, a plan description, and a summary plan description, and expressed his concern that he never received the "summary de-

scription of material modifications" that he had requested back in 1993. Plaintiff's Statement of Material Facts, Exhibits 15, 17, 19. Its tone growing more impatient, Chinet informed Dall that he was already in possession of the 1993 revisions to the Plan; they were summarized in the brochures, *Your Retirement Benefits ... A Better Balance* brochure and *1993 Early Retirement Window. Id.* at Exhibit 16. Chinet sent Dall copies of both brochures on February 2, 1995, and again on March 21, 1995. *Id.* at Exhibits 16, 19. Finally, on April 6, 1995, Chinet sent Dall a copy of the Amended Plan. *Id.* at Exhibit 21.

## DISCUSSION

Summary judgment is appropriate when the record shows there is no genuine issue as to any material fact and that the moving party is entitled to summary judgment as a matter of law. Fed.R.Civ.P. 56(c). Once the moving party has come forward identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any" which "it believes demonstrate the absence of a genuine issue of material fact," the adverse party can avoid summary judgment only by providing properly supported evidence of disputed material facts that would require trial. *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 2551–52, 91 L.Ed.2d 265 (1986).

The trial court must "view the entire record in the light most hospitable to the party opposing summary judgment, indulging all reasonable inferences in that party's favor". *Griggs–Ryan v. Smith,* 904 F.2d 112, 115 (1st Cir.1990). The Court will not, however, pay heed to "conclusory allegations, improbable inferences [or] unsupported speculation." *Medina–Munoz v. R.J. Reynolds Tobacco Co.,* 896 F.2d 5, 8 (1st Cir.1990). If no genuine issue of material fact emerges, then the motion for summary judgment may be granted.

## I. COUNT V: FAILURE TO DISCLOSE

In Count V, Dall argues that he requested summaries of modifications made to the Chinet Plan in 1992, 1993, and 1994, and that Chinet failed to send him the information he requested. Plaintiff's Motion for Summary Judgment at 4–8. Chinet contends that it sent Dall all of the information available and that it fulfilled ERISA's disclosure requirements. Defendants' Opposition to Plaintiff's Motion for Summary Judgment at 8–16. ERISA imposes on plan administrators numerous obligations to provide information to their participants in and beneficiaries of employee benefit plans. For purposes of the instant motion on Count V, there are two pertinent statutory provisions: section 1024(b)(1) provides that a plan administrator must automatically furnish summaries of "all modifications and changes" to a plan within 210 days after the end of the plan year in which the change is adopted, 29 U.S.C. § 1024(b)(1); and section 1132(c) provides that a court may, in its discretion, fine a plan administrator who fails to furnish within thirty days requested information required to be furnished under the statute up to $100 a day from the date of such failure, 29 U.S.C. § 1132(c).

█ It is clear that when an organization modifies its plan, ERISA's notice requirements are quite loose. There is no requirement that anyone notify plan participants in advance of plan adoption or simultaneously with plan adoption. *See* 29 U.S.C. § 1024(b)(1)(B). Instead, an ERISA plan administrator is automatically obligated to furnish all participants with a summary of the material modifications made to a plan no later than 210 days after the end of the year wherein the changes were to go into effect. 29 U.S.C. § 1024(b)(1).

█ If, however, a plan participant requests that the plan administrator furnish him or her with information required to be furnished under section 1024(b)(1) automatically, section 1132(c) is triggered and an administrator has thirty days to respond. 29 U.S.C. § 1132(c) (an administrator who fails or refuses to comply with a request for *"any information which such administrator is required... to furnish"* to a participant may, in the court's discretion, be liable to such participant) (emphasis added); *Crotty v. Cook,* 121 F.3d 541, 548 (9th Cir.1997) (hold-

ing that if a participant requests information, he is automatically entitled to the civil enforcement penalty provided for by 29 U.S.C. § 1024(b)(1)); *Brooks v. Metrica, Inc.* 1 F.Supp.2d 559, 564–65 (E.D.Va.1998) (holding that violation of ERISA disclosure section 1024(b)(1) results in penalties under 29 U.S.C. § 1132(c)); *James v. New York City District Council of Carpenters' Benefit Funds*, 947 F.Supp. 622, 633 (E.D.N.Y.1996) (applying 29 U.S.C. § 1132(c) penalty to administrator who failed to supply information required to be furnished to plan participants under 29 U.S.C. § 1024(b)(1)). Thus, although the administrator has 210 days after the end of the plan year to automatically disclose to participants a change to the plan made in that year, if a participant to the plan specifically requests something he was entitled to receive automatically, then the civil penalty provision, section 1132(c), applies and the administrator has thirty days to comply with the request.

 The 1992, 1993, and 1994 amendments to the Plan made by Chinet are material modifications, summaries of which are required to be furnished to participants pursuant to section 1024(b)(1). In order to trigger the section 1132(c) civil penalty, Dall must demonstrate that he requested the 1992, 1993, and 1994 modifications to the plan and that Chinet failed to comply with his request within thirty days.[4] This Court finds that in regard to the 1992 and 1993 amendments, Dall requested the information and Chinet failed to respond within thirty days of his request. With respect to the 1994 amendments, this Court finds that Dall never specifically requested the information.

### A. 1992 Amendment

Chinet modified the Plan in 1992 to provide an early retirement opportunity to employees sixty years of age and older with at least fifteen years of service at Chinet with a social security gap payment to be paid until the employees reach age sixty two. Amended Plan at § 5.4. Dall contends that he should have received information regarding this opportunity in response to his written requests for plan information. Plaintiff's Motion for Summary Judgment at 6, 10. Chinet concedes that it did not send Dall a summary of the 1992 early retirement opportunity but argues that Dall never properly requested the information and, in any event, he was not entitled to receive it. Defendants' Response to Plaintiff's Motion for Summary Judgment at 8–15.

 The first issue for the Court to determine is whether Dall properly requested a summary of the 1992 amendment. A written request for documents under section 1024(b)(4) implicates the penalty provision of section 1332(c)(1) only if the request gives the administrator clear notice of exactly what information is sought. *Faircloth v. Lundy Packing Co.*, 91 F.3d 648, 655 (4th Cir.1996); *Anderson v. Flexel, Inc.*, 47 F.3d 243, 248 (7th Cir.1995); *Moothart v. Bell*, 21 F.3d 1499, 1503 (10th Cir.1994); *Williams v. Caterpillar, Inc.*, 944 F.2d 658, 667 (9th Cir. 1991); *Brooks*, 1 F.Supp.2d at 567. The Court will thus examine the requests Dall sent to Chinet to determine whether those requests put Chinet on notice that Dall sought a summary of the 1992 material modification.

Dall requested a summary of the 1992 amendment in his May 6, 1993, letter in which he asked for "the Retirement Plan Amendment Report."[5] Although a specific

---

**4.** Causes of action under section 1132(c) may be brought against designated plan administrators only, rather than the plan itself or the employer. *See* 29 U.S.C. § 1132(c); *Thorpe v. Retirement Plan of Pillsbury Co.*, 80 F.3d 439, 444 (10th Cir.1996). For purposes of the First Amended Complaint, Chinet stipulated that it was the plan administrator for all counts except for the breach of fiduciary duty claims. Joint Stipulation of the Parties at ¶ 5 (Docket No. 41).

**5.** Dall's letters of May 24, 1993, April 14, 1994, December 28, 1994, February 6, 1995, and

March 15, 1995, either clarify that the earlier requests were for information regarding 1993 amendments or specifically request information concerning amendments made in 1993. Plaintiff's Statement of Material Facts, Exhibits 9, 12, 15, 17, and 19. Dall's letter of March 29, 1993, requesting "all plan documents and copies of all documents filed by the plan with the U.S. Department of Labor" does not clearly request amendments made to the plan that may not yet be filed with the Department of Labor. *Id.* at Exhibit 1.

document entitled "Retirement Plan Amendment Report" did not exist, this phrase was sufficient to put Chinet on notice that Dall was interested in receiving information regarding amendments made to the Plan. Chinet admitted in its written response to Dall that it understood him to be requesting information regarding modifications to the Plan, albeit for modifications made in 1993. Plaintiff's Statement of Material Facts at Exhibit 10 (correcting Dall and asserting that all plan participants must receive a "summary of material modifications" for substantive plan changes within 210 days of the close of the plan year). This letter indicates that Chinet was aware that Dall was requesting changes made to the Plan. Chinet knew that the only completed document in the hands of participants was the 1987 version. Dall's request for an amendment report was sufficient to put Chinet on notice that he wanted to receive amendments made to the Plan since the 1987 version. Accordingly, this Court finds that Dall requested information pertaining to the amendment made to the plan in 1992 in his letter of May 6, 1993.

Chinet does not dispute Dall's contention that it failed to send Dall a summary of the 1992 early-retirement opportunity. Chinet admits that "there was no proper summary plan description or summary of material modifications employed in enhancing early retirement benefits to nine participants in 1992 who were over the age of 60." Defendants' Reply to Plaintiff's Response to Defendants' Motion for Partial Summary Judgment (Docket No. 57) at 5. Nonetheless, Chinet insists that it was not required to provide Dall with information about benefits for which he was not eligible. Defendants' Opposition to Summary Judgment at 14. This argument, however, does not persuade the Court given the purposes of ERISA's disclosure provisions.

A participant to a plan who requests amendments made to the plan may be interested in determining whether or not he or she is eligible for the new benefits that are the subject of the amendment. Likely, this is the purpose of most plan participants' information requests. The purpose of the reporting and disclosure provisions are to in-

sure that plan participants are able to obtain information about the benefits which they are eligible to receive. *Arsenault v. Bell,* 724 F.Supp. 1064, 1066 (D.Mass.1989). The drafters of ERISA recognized, "a need for a more particularized form of reporting so that the individual participant knows exactly where he stands with respect to the plan—what benefits he may be entitled to, what circumstances may preclude him from obtaining benefits, [and] what procedures he must follow to obtain benefits." House Committee on Education and Labor, Employee Retirement Income Security Act of 1974, H.R.Rep. No. 533, 93d Cong., 2d Sess. 11 (1973), reprinted in 1974 U.S.Code Cong. & Admin. News 4639, 4649. It would thus belie logic to interpret the ERISA disclosure requirement as extending only to documents describing benefits for which the administrator unilaterally determines the requesting participant is eligible. Here, Dall's written request for an amendment report was a sufficient request for information regarding the 1992 amendments made to the plan. Hence, Chinet was clearly required to send Dall a summary of the early retirement opportunity, regardless of whether, in fact, Dall was eligible, within thirty days of May 6, 1992.

Chinet also argues that as long as a plan administrator provides copies of all the plan documents available to him, he has adequately fulfilled the information request. ERISA, however, requires benefit plans to operate pursuant to a written document. 29 U.S.C. § 1102(a). As discussed *supra* II(B)(2), from this provision a rule has been judicially fashioned that requires amendments to be adopted in writing. This rule would be seriously undermined if a plan administrator could avoid statutory penalties for failure to respond to an information request because the plan sponsor has not formalized the amendment in writing. Chinet's argument that because it had not properly prepared a summary of the 1992 early retirement opportunity, it is excused from the disclosure requirement is thus unpersuasive.

Dall argues that Chinet has failed to comply with his request for a summary of material modifications. Plaintiff's Motion for Summary Judgment at 7. This is despite the

fact that Dall received a copy of the Amended Plan on April 6, 1995, that included a description of the early retirement benefits offered in 1992. Plaintiff's Statement of Material Facts, Exhibits 20, 21. Notwithstanding his receipt of the Amended Plan, Dall argues that this document is not a summary of material modifications required to be provided to participants upon their request. Dall's contention on this point appears to be about form rather than substance. He fails to explain why the Amended Plan's description of the 1992 amendment is deficient in any substantive respect. Dall has now received a summary of the 1992 amendment in its final form.[6] Therefore, this Court finds that Dall requested a description of the 1992 early retirement program on May 6, 1993, and did not receive a summary of the program until April 6, 1995—almost two years after Chinet was statutorily required to furnish him with the document. *See* 29 U.S.C. § 1132(c).

## B. 1993 Amendments

██ Chinet also amended the Plan in 1993. The 1993 amendments provided for an early retirement opportunity for employees age fifty five with fifteen years of service with a social security gap payment to be paid to age sixty two from plan assets. Amended Plan at § 5.5. The Plan was also amended in 1993 to provide a new retirement formula and a new death benefit. *Id.* §§ 4.2, 8.8. Unlike in 1992, Chinet hired Hewitt Associates to prepare two summaries of the amendments made to the Plan in 1993. Defendants' Statement of Material Facts at ¶ 11. As previously discussed, one document was entitled "*Your Benefits ... A Better Balance*" and the second was entitled, "*1993 Early Retirement Window.*" *Id;* Plaintiff's Statement of Material Facts, Exhibits 5, 7. Dall made a request to examine the "Retire-

ment Plan Amendment Report" in his letter dated May 6, 1993. Plaintiff's Statement of Material Facts, Exhibit 8. Chinet responded by informing Dall that all information regarding "amendments made in 1993" was provided to him in April of 1993. *Id.* at Exhibit 10. The Court understands Chinet's reply as an admission that Dall's letter of May 6, 1993, was a request for information regarding 1993 amendments. The issue is whether Chinet adequately responded to Dall's request of May 6, 1993, when it sent him only the first of the two brochures. The Court determines that it did not.

Because it is undisputed that Dall was given the brochure, *Your Retirement Benefits ... A Better Balance,* and this Court finds that no genuine dispute exists that Dall was told about the existence of a 1993 early retirement opportunity for which he was ineligible, the issue is narrowed to whether Chinet was required to send Dall a copy of the *1993 Early Retirement Window* brochure to fulfill his request for information. Plaintiff's Statement of Material Facts ¶¶ 5, 13, Exhibits 3, 4. For the same reasons discussed *supra* I(A), the Court holds that Chinet was required to send Dall this information even though it pertained to benefits for which he was unquestionably ineligible. Dall requested all amendments made to the Plan. Accordingly, Dall was entitled to receive the 1993 Early Retirement Window brochure in response to his request for an amendment report made on May 6, 1993.

██ The next issue is on what date Dall's request for the brochure entitled *1993 Early Retirement Window* was fulfilled. Dall claims that he first received the brochure from Chinet on February 2, 1995.[7] Chinet's position is unclear. Although Chinet claims in its memorandum that it "sent Dall *another* copy" of the brochure on February 2, 1995,

---

6. Although it appears that the amendment changed in substance regarding whether it was offered only to Waterville plant employees or to all employees who met the age and length-of-service requirement, this is more a problem of whether the Plan was properly amended rather than properly reported to participants.

7. Dall received a copy of the brochure *"1993 Early Retirement Window"* from the Maine Hu-

man Rights Commission in December of 1994. Plaintiff's Statement of Material Facts ¶ 15. However, as discussed below, ERISA requires a plan administrator to provide a participant with information upon his or her request and, therefore, for purposes of this motion, this Court will consider February 2, 1995, the date that Chinet sent Dall the brochure, as the date that Chinet fulfilled the statutory requirement.

implying that this was not the first time it sent the brochure to Dall, Chinet provides no evidence that it sent a copy of *1993 Early Retirement Window* to Dall on a date before February 2, 1995. Lee Affidavit (Docket No. 33) ¶ 10 (emphasis added). Therefore, the Court finds that Chinet first sent Dall a copy of the brochure, *1993 Early Retirement Window,* on February 2, 1995.[8]

## C. 1994 Amendment

In 1994, Chinet amended its Plan to offer an early retirement opportunity to employees fifty five years old or older with at least fifteen years of service with Chinet. Amended Plan at § 5.6. The Court finds that Dall did not properly request a copy of the 1994 amendment and, thus, ERISA's thirty-day response requirement was not implicated.

Dall's general requests for information made in 1993, although arguably for all amendments to the plan, were made before the 1994 amendments to the plan had become effective. Hence these letters will not be read as a request for the change to the Plan made in 1994. Dall's requests for information made in 1994 are also not requests for the 1994 amendment. Dall's letter of April 14, 1994, inquires about his prior requests made during the year of 1993. Plaintiff's Statement of Material Facts at Exhibit 12. Dall's letter of December 28, 1994, inquires about an alleged transfer of plan assets and requests an annual report, a plan description, and a summary plan description. *Id.* at Exhibit 15. Dall's February 6, and March 15, 1995, letters request a copy of the amended Plan upon its completion and reiterate his interest in a copy of "the changes approved ... in January 1993." *Id.* at Exhibits 17, 18. When Dall referred to amendments in this correspondence, he specified the amendments made to the Plan in 1993. Therefore, because Dall did not request a summary of

the 1994 amendment, Chinet was not required to provide them to Dall.

## D. Penalties

Having determined that there is no genuine dispute whether Chinet violated ERISA's disclosure requirements, this Court grants summary judgment in favor of Dall on Count V. The next issue concerns the appropriate amount of the penalty. Dall asks this Court to impose the maximum penal sum on Chinet for the above-discussed violations— $100 a day. Chinet has not suggested an alternative figure because it stalwartly asserts that it did not violate the disclosure requirements of ERISA.

Imposition of penalties for failure to provide documents to participants is committed to the discretion of the court. *Celi v. Trustees of Pipefitters Local 537 Pension Plan,* 975 F.Supp. 23, 28 (D.Mass.1997) (*citing Rodriguez–Abreu v. Chase Manhattan Bank,* 986 F.2d 580, 588 (1st Cir.1993)). The Court may properly consider prejudice and bad faith as factors in deciding whether to impose penalties. *Id; see also Tucker v. General Motors Retirement Program,* 949 F.Supp. 47, 56 (D.Mass.1996) (awarding no penalties because plaintiff was not prejudiced and Defendants' actions did not evidence bad faith nor an intent to undermine the plaintiff's rights). Here, Dall has not shown any bad faith on the part of Chinet. Furthermore, as this Court discusses in depth in regard to Dall's breach of fiduciary duty claims, Dall's allegations of prejudice to him as a result of Chinet's failure to provide him with summaries of retirement benefits for which he was ineligible are unpersuasive. *See supra* II(C).

This case is thus very similar to *Tucker,* in which the court determined that the imposition of fees was not appropriate. *Tucker,* 949 F.Supp. at 56. In that case, the plan administrator failed to fully respond to the plaintiff's request for information. The court

---

8. Dall persists that the brochures and the Amended Plan he received on April 6, 1995, are not sufficient responses to his request for an amendment report. Plaintiff's Motion for Summary Judgment at 5. Dall argues that this information is deficient because it fails to inform participants that Plan assets were used to fund

specific benefits and changes to the Plan document adopted in 1993. *Id.* This Court disagrees. As of February 2, 1995, Dall had received the modifications to the Plan in their final form and this is sufficient to fulfill his request for information.

found that GM's failure to provide all of the documentation requested left plaintiff without the information necessary to file an immediate appeal. *Id.* However, because the appeal was ultimately unsuccessful and GM was not motivated by malice or neglect, the Court found that penalties were not warranted. *Id.* In this case, Dall did not miss any opportunity to appeal benefits denied him. In fact, the information that Dall sought did not pertain to benefits for which he was even eligible. Moreover, here, as in *Tucker,* although Chinet failed to fully respond to Dall's requests, in responding Chinet sent those documents the plan administrator believed in good faith to be most pertinent. Having carefully considered the facts and circumstances involved, the Court finds that this is not a situation where the imposition of a penalty is warranted. Accordingly, Dall's request for penalties pursuant to section 1132(c)(1) shall be denied.

## II. COUNT VI: BREACH OF FIDUCIARY DUTY

In Count VI, Dall claims that Chinet breached its fiduciary duty under section 1109 of ERISA in a variety of ways regarding its amendment to, and administration of, the Plan and has requested various equitable relief. 29 U.S.C. § 1109(a) (a fiduciary "who breaches any of the responsibilities, obligations, or duties imposed upon fiduciaries by this subchapter ... shall be subject to other such equitable or remedial relief as the court may deem appropriate"). Under § 1132(a)(3), individual plan participants may sue directly for a breach of fiduciary duty so long as they seek an equitable remedy. *Varity Corp. v. Howe,* 516 U.S. 489, 505, 116 S.Ct. 1065, 1079, 134 L.Ed.2d 130 (1996).

### A. Chinet's Fiduciary Status

The fiduciary duties imposed by ERISA apply only to those people or entities properly classified as fiduciaries. 29 U.S.C. § 1104; *Beddall v. State Street Bank and Trust Co.,* 137 F.3d 12, 18 (1st Cir.1998); *Boucher v. Williams,* 13 F.Supp.2d 84, 90 (D.Me.1998); *Santana v. Deluxe Corp.,* 920 F.Supp. 249, 253 (D.Mass.1996). Chinet asserts that it is entitled to summary judgment on Count VI because Dall has failed to establish that any of the named defendants in the complaint are fiduciaries with respect to the conduct alleged to be wrongful. Chinet further contends that the Retirement Committee, which refers to itself as the "Benefits Committee" and the "Employment Committee," is the fiduciary who should be named as the defendant to Count VI. Defendants' Motion for Partial Summary Judgment at 6. Dall argues that he properly named Chinet as the fiduciary and that the Retirement Committee does not, in fact, exist and therefore could not be named in the Complaint. Plaintiff's Response to Defendants' Motion for Partial Summary Judgment at 3.

Dall flatly asserts that Chinet is the plan fiduciary because it is the plan administrator. Plaintiff's Motion for Summary Judgment at 8; Plaintiff's Response to Defendants' Motion for Partial Summary Judgment at 3. Dall points out that the summary plan description names Keyes Fibre Company (now The Chinet company) the plan administrator. Furthermore, in his Motion for Summary Judgment on Count VI, Dall blanketly asserts that Chinet as "plan administrator has fiduciary duties to the plan." Plaintiff's Motion for Summary Judgment at 8. However, title alone does not always confer fiduciary status. A plan administrator and a fiduciary are defined separately under ERISA. 29 U.S.C. § 1002(16)(A) (plan administrator) and 29 U.S.C. § 1002(21)(A) (fiduciary). Fiduciary status does not depend on whether one is titled "plan administrator." *See Boucher,* 13 F.Supp.2d at 91; *see also Blatt v. Marshall & Lassman,* 812 F.2d 810, 812 (2d Cir.1987) (whether an individual or entity is an ERISA fiduciary must be determined by focusing on the function performed).

A person is a fiduciary under ERISA if the person is "named [as the fiduciary] in the plan instrument, or who, pursuant to a procedure specified in the plan is identified as the fiduciary." 29 U.S.C. § 1102(a)(2); *see also* 29 U.S.C. § 1105(c)(1) (permitting allocation of fiduciary responsibility pursuant to the plan instrument). Thus, the Court must first look at the Plan document to determine who it designates as the fiduciary. The 1987 Plan

specifically provides that the "Retirement Committee" is "the named fiduciary within the meaning of Title I of ERISA." 1987 Plan § 12.1. Furthermore, the 1987 Plan provides that "except as to powers and duties and the determination of questions herein expressly reserved to the Company or given to the Trustee, the Retirement Committee shall have full charge of the administration of this Plan." The 1987 Plan § 12.2. Hence, with respect to amending the Plan, the Retirement Committee is clearly the named fiduciary.

■■■■■ In addition to named fiduciaries, ERISA extends fiduciary status to functional fiduciaries—persons who act as fiduciaries. *Beddall v. State Street Bank and Trust Co.,* 137 F.3d 12, 18 (1st Cir.1998); *Boucher,* 13 F.Supp.2d at 90–91. ERISA provides that a person is a fiduciary if he has discretionary policy-making power respecting management of the plan. 29 U.S.C. § 1002(21)(A). In this regard, section 1002(21)(A) of ERISA provides that:

> a person is a fiduciary with respect to a plan to the extent (i) he exercises any discretionary authority or discretionary control respecting management of such plan or exercises any authority or control respecting management or disposition of its assets; (ii) he renders investment advice for a fee or other compensation, direct or indirect, with respect to any moneys or other property of such plan, or has any authority or responsibility to do so, or (iii) he has any discretionary authority or discretionary responsibility in the administration of such plan. Such term includes any person designated under section 1105(c)(1)(B) of this title.

29 U.S.C. § 1002(21)(A). "The key determinant of whether a person qualifies as a functional fiduciary is whether that person exercises discretionary authority in respect to, or meaningful control over, an ERISA plan, its administration, or its assets." *Beddall,* 137 F.3d at 18; *see also Varity,* 516 U.S. at 498, 116 S.Ct. at 1071. Accordingly, whether an individual or entity is an ERISA fiduciary must be determined by focusing on the function performed. *Boucher,* 13 F.Supp.2d at 91. Therefore, the Court, viewing the evidence in a light most favorable to Plaintiff must consider whether Chinet possesses the requisite discretionary powers to render it a functional fiduciary. The Court concludes that it does.

The 1987 Plan gives Chinet the explicit authority to amend the Plan. Section 10.2 of the 1987 Plan document provides that "the Company reserves the right to amend, modify, or terminate the Plan at any time by the action of its Board of Directors." The 1987 Plan at § 10.1. According to the 1987 Plan the Retirement Committee has the "right to amend or modify the Plan by vote of its members ... if such amendments are administrative in nature, or mandated by any applicable law, and do not increase the costs of the Plan". *Id.* Because Chinet's board of directors had authority under the Plan to approve or disapprove of amendments made to the Plan, it had discretionary policy-making authority regarding the harms alleged in this action that primarily relate to whether the Plan was properly amended and the amendments disclosed. Consequently, Dall's claim does not fail because he did not name the Retirement Committee as Chinet claims it must. Chinet is a properly named fiduciary in this action.

## B. Breach of Fiduciary Duties

An ERISA fiduciary, properly identified, must employ "the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiarity with such matters would use." 29 U.S.C. § 1104(a)(1)(B). The fiduciary must also act "solely in the interest of the participants and beneficiaries," and his overarching purpose should be to "provid[e] benefits to the participants and their beneficiaries." 29 U.S.C. § 1104(a)(1).

Several issues present themselves on the parties' cross motions for summary judgment. Dall asserts several theories of how Chinet breached its fiduciary duty: First, he argues that Chinet arbitrarily and capriciously amended the plan by providing benefits to employees based on age rather than length of service. Second, he contends that Chinet improperly adopted the 1992, 1993, and 1994 amendments in violation of ERISA's requirement for amendments to be in writing and

formally adopted. Third, Dall points out that Chinet failed to notify plan participants of the changes according to the disclosure requirements of ERISA. Fourth, Dall argues that Chinet fell short of the fiduciary obligations required under ERISA and breached the terms of the Plan because it failed to properly authorize a plan administrator. Finally, Dall contends that Chinet failed to properly qualify the Plan's trust under the requirements of the Internal Revenue Code because it submitted an incorrect application to the IRS. In addition to disputing whether its actions constituted a breach of its fiduciary duties, Chinet counters that it is entitled to summary judgment because Dall lacks standing to assert the claims because he has not shown that he suffered harm or prejudice as a result of Chinet's alleged breaches. The Court addresses each argument in turn.

## 1. Arbitrary and Capricious

 Dall complains that "Chinet acted in an arbitrary and capricious manner by operating under a structurally deficient plan." Plaintiff's Motion for Summary Judgment at 14. Essentially, Dall contends that the amendments to the Plan are substantively arbitrary and capricious because they offer gap payments and lifetime medical benefits to employees of a certain age without regard to length of service at the company. *Id.* at 14–15. According to Dall, Chinet acted arbitrarily and capriciously when it chose to pay "extraordinarily high" benefits to "a chosen few" according to "an age-based standard" which resulted in the exclusion of a high number of employees from the program. *Id.* at 15. The amendments, Dall asserts, indicate that "Chinet ignored its fiduciary obligations to utilize plan assets for the exclusive benefit of the participants in fulfilling its own business motives." Plaintiff's Reply to Defendants' Motion for Summary Judgment at 12. The crux of Dall's contention is that by amending the Plan in this manner, Chinet breached its fiduciary obligation to discharge its duties solely in the interest of the Plan's participants and beneficiaries. Chinet counters that its decision to amend the Plan in this manner is a business decision of plan design and is not subject to the fiduciary obligations under ERISA. Defendants' Op-

position to Plaintiff's Motion for Summary Judgment at 18–20. This Court agrees with Chinet.

 This Court found, *supra* section II(A), that under the 1987 Plan, Chinet was both an employer and the Plan's fiduciary as ERISA permits pursuant to section 1108(c)(3). 29 U.S.C. § 1108(c)(3) (nothing in this section "shall be construed to prohibit any fiduciary from ... serving as a fiduciary in addition to being an officer, employee, agent, or other representative of a party in interest"); *Varity Corp.*, 516 U.S. at 498, 116 S.Ct. at 1071. Chinet thus is responsible for both administering its benefit Plan and for its design. ERISA's fiduciary obligations govern the administration of the benefit plan and not its precise design. *Haberern v. Kaupp Vascular Surgeons Ltd. Defined Benefit Pension Plan*, 24 F.3d 1491, 1498 (3rd Cir.1994). ERISA allows an employer who acts as a plan administrator to wear two hats, and it assumes fiduciary status only when and to the extent that it functions in its capacity as plan administrator and not when it conducts its business, including design of its employee benefit plan. This Court finds that when Chinet amended the Plan to provide early retirement benefits, it was designing its employee benefit plan and is not subject to ERISA's fiduciary obligations in regard to this decision.

 In finding that Chinet's decision to amend the Plan to provide an early retirement opportunity to certain employees was a business decision, this Court applies the well-settled rule developed in cases clarifying that when an employer decides to amend a benefit plan, as opposed to managing any assets of the plan and administering the plan in accordance with its terms, its actions are not to be judged by fiduciary standards. *Curtiss–Wright Corp. v. Schoonejongen*, 514 U.S. 73, 78, 115 S.Ct. 1223, 1228, 131 L.Ed.2d 94 (1995) (Employers are generally free under ERISA, "for any reason at any time, to adopt, modify or terminate welfare plans.");*see also Haberern*, 24 F.3d at 1497–99; *Elmore v. Cone Mills Corp.*, 23 F.3d 855, 860–61 (4th Cir.1994) (en banc); *Averhart v. U.S. WEST Management Pension Plan*, 46

F.3d 1480, 1488 (10th Cir.1994) ("an employer does not act as a fiduciary when it amends or otherwise sets the terms of the plan"); *Pope v. Central States Southeast and Southwest Areas Health and Welfare Fund,* 27 F.3d 211, 213 (6th Cir.1994) (citing cases); *Smith v. Hartford Ins. Group,* 6 F.3d 131, 141 n. 13 (3d Cir.1993); *Belade v. ITT Corp.,* 909 F.2d 736, 737–38 (2d Cir.1990); *Landry v. Air Line Pilots Ass'n Intern.,* AFL–CIO, 901 F.2d 404, 414–15 (5th Cir.), *cert. denied,* 498 U.S. 895, 111 S.Ct. 244, 112 L.Ed.2d 203 (1990); *Sutton v. Weirton Steel Division of National Steel Corp.,* 724 F.2d 406, 410 (4th Cir.1983) (holding that an employer may change nonvested employee benefits without violating ERISA); *Jackson v. Truck Drivers' Union Local 42 Health and Welfare Fund,* 933 F.Supp. 1124, 1142–43 (D.Mass.1996) ("from the outset, it is important to note that ERISA's fiduciary duties generally do not govern a plan sponsor's decision to terminate a welfare plan"). It is clearly established that when an employer sets or amends the terms of its benefit plans or terminates the Plan altogether, it is not acting as a fiduciary under ERISA. Hence, when Chinet decided to amend the plan to provide an early retirement benefit to some, but not all, employees, it was making a business decision regarding plan design and was not acting as a fiduciary subject to ERISA's obligations.

■■■■■ Because Chinet was not acting as a fiduciary, it was not obligated to amend the plan for the benefit of participants or beneficiaries pursuant to 29 U.S.C. § 1104. "[A]n employer is free to develop an employee benefit plan as it wishes because when it does so it makes a corporate management decision, unrestricted by ERISA's fiduciary duties." *Averhart,* 46 F.3d at 1488. The fact that the early retirement opportunities were not available to Dall and other employees does not give rise to a breach of an ERISA obligation. ERISA simply does not mandate

that employers provide any particular benefits, and does not itself proscribe discrimination in the provision of employee benefits. *Id.* (*citing Shaw v. Delta Air Lines, Inc.,* 463 U.S. 85, 91, 103 S.Ct. 2890, 2897, 77 L.Ed.2d 490 (1983)); *accord Owens v. Storehouse, Inc.,* 984 F.2d 394, 398 (11th Cir.1993) ("[i]t is insufficient merely to allege discrimination in the apportionment of benefits under the terms of the plan."); *McGann v. H & H Music Co.,* 946 F.2d 401, 408 (5th Cir.1991), *cert. denied, Greenberg v. H & H Music Co.,* 506 U.S. 981, 113 S.Ct. 482, 121 L.Ed.2d 387 (1992) ("ERISA does not broadly prevent an employer from 'discriminating' in the creation, alteration or termination of employee-benefit plans"). Thus Chinet's decision to amend the Plan to provide early retirement benefits for some, but not all, of its employees does not offend the fiduciary requirements of ERISA, and Dall's breach of fiduciary duty claim based on this decision fails as a matter of law.

**2. Improper Amendment of the Plan** [9]

■■■■ Dall contends that Chinet violated ERISA, and the terms of the Plan, because it failed to properly and formally adopt the 1992 and 1994 amendments.[10] Plaintiff's Motion for Summary Judgment at 10–12. Because the amendments were improperly adopted, Dall claims that Chinet violated ERISA and the terms of the Plan because it distributed early retirement benefits according to informally enacted amendments. *Id.* at 14. The 1987 Plan document requires a vote of the board of directors to amend the Plan in any way when a plan amendment increases the costs to the Plan. 1987 Plan § 10.1. Dall asserts that the record demonstrates that Chinet never formally voted on the 1992 or 1994 early retirement windows. Dall also complains of substantive differences between the informal memorandums pur-

---

9. It is uncontested that when Chinet allegedly breached ERISA's technical obligations regarding proper amendment of an ERISA plan and disclosure of such changes, it was subject to ERISA fiduciary obligations because it was administering the Plan rather than planning its design. Therefore, with regard to Dall's remaining contentions discussed below, Chinet is subject to ERISA's fiduciary obligations.

10. Dall does not assert that the 1993 amendment was improperly adopted. Plaintiff's Motion for Summary Judgment at 10–12. The record shows that the board formally adopted this amendment by board vote on December 17, 1992. Plaintiff's Statement of Material Facts, Exhibit 28.

porting to adopt the 1992, 1993, and 1994 amendments and the final form of the amendments as included in the Amended Plan. Plaintiff's Motion for Summary Judgment at 11–12. Because this Court concludes that Chinet failed to formally amend the Plan because it did not have a timely board vote, it need not examine these discrepancies between the drafts and final forms of the amendments.

 Although ERISA does not require benefit plans to adopt a particular amendment procedure, ERISA expressly provides that "[e]very employee benefit plan shall be established and maintained pursuant to a written instrument," 29 U.S.C. § 1102(a)(1). Relying primarily on this provision, case law has fashioned the rule that an ERISA welfare plan may not be amended informally. Pursuant to this rule, ERISA prohibits oral and informal written amendments to welfare benefit plans. *Smith v. National Credit Union Admin. Board*, 36 F.3d 1077, 1080 (11th Cir.1994) ("ERISA prohibits not only oral modifications, but informal written amendments of employee benefit plans as well."); *Hozier v. Midwest Fasteners, Inc.*, 908 F.2d 1155, 1162 (3rd Cir.1990) ("ERISA precludes oral amendments to employee benefit plans."); *Pizlo v. Bethlehem Steel Corp.*, 884 F.2d 116, 120 (4th Cir.1989) (stating "that 'informal' or 'unauthorized' modification of pension plans is 'impermissible' under ERISA"); *Moore v. Metropolitan Life Insurance Co.*, 856 F.2d 488, 492 (2d Cir.1988) ("An ERISA welfare plan is not subject to amendment as a result of informal communications between the employer and plan beneficiaries."); *Mohalley v. Kendall Health Care Products Co., Inc.*, 903 F.Supp. 1530, 1536 (M.D.Ga.1995) ("Any modification or amendment to an existing ERISA plan may not be adopted or applied ... unless the amendment is in a formal, complete, and written form."). Accordingly, amendments to an ERISA welfare plan must be adopted in writing and in the manner required under the benefit plan.

Chinet asserts that the 1994 amendment was properly enacted. Defendants' Reply Memorandum in Support of Its Motion for Partial Summary Judgment (Docket No. 57) at 5. However, it concedes that it did not formally amend the Plan in 1992 until it did so retroactively in 1994 when it revised the Plan document and the board properly adopted the amendments. *Id.* Chinet points to a resolution of Chinet's board of directors, dated December 16, 1994, that memorializes in writing the formal adoption of the 1992, 1993, and 1994 amendments to the Plan ("the 1994 Resolution"). Defendants' Motion for Partial Summary Judgment, Affidavit (Docket No. 54), Exhibit 1. The Resolution states,

[t]he Employer amends, restates, and adopts the Plans in substantially the form annexed hereto, together with such changes as the proper officers of the Employer, or any of them, deem necessary or appropriate to reflect the intentions of the Board.

Annexed to the 1994 Resolution is a copy of the Amended Plan document which includes the 1992, 1993, and 1994 amendments in their final form. *Id.* Chinet does not dispute that the final versions of the 1992 and 1993 amendments, as they appear in the Amended Plan, differ slightly from the content of the interoffice correspondence pursuant to which the amendments were implemented.

 Dall and Chinet disagree on whether the Plan permits retroactive amendment. Regardless of whether the Plan permits the company to amend the Plan retroactively, this Court will adhere to the principal articulated in *National Credit Union Administration Board*, 36 F.3d at 1081, that there is no legally significant distinction between an oral amendment and an oral amendment which is formalized in a writing later and retroactively applied to the time of the oral amendment. The Eleventh Circuit reasoned that, "[b]ecause we find oral amendments impermissible, we likewise conclude that subsequently formalized and retroactively applied oral amendments are impermissible." *Id.* In *National Credit Union*, the employees were given notice of the amendments at the time they were informally adopted but the court held that informal written modifications cannot save oral amendments from the requirements of ERISA. *Id.* According to this rule, any modification or amendment to an ERISA plan

may be implemented or applied only after the amendment has been appropriately adopted in a formal, complete, and written form. The Court finds the reasoning in *National Credit Union* persuasive here.

The purpose of ERISA—to protect the interests of employees in employee benefit plans—would be undermined if this Court were to permit subsequently formalized amendments to take effect as of their informal genesis. Here, Chinet told employees who were qualified about the early retirement opportunity. The record demonstrates that these amendments changed slightly in substance from the memoranda at the time of Chinet's implementation and Amended Plan version.[11] Furthermore, as demonstrated *supra* section II, when employees requested information regarding changes to the plan, Chinet did not provide information about the early retirement options in response. Therefore, the problems resulting from retroactive amendment exist in this case. Without formal adoption of the amendments, plan participants are unable to compare notices of modification they might receive with the amendments themselves and are precluded from determining their rights and obligations at the time the amendments are informally adopted.

In order to defeat summary judgment, Chinet must present conclusive evidence that the Chinet board properly voted on the 1992 and 1994 early retirement opportunities before they were implemented. There is no evidence in the record that the 1992 and 1994 amendments were properly enacted. The Chinet board did not vote on these amendments until December 16, 1994. The record shows that the 1994 early retirement opportunity were effective on January 1, 1994. The Amended Plan § 5.6(a) and the 1992 early retirement opportunity was effective on February 1, 1992. Amended Plan § 5.4(a). Thus, the early retirement opportunities in

1992 and 1994 were implemented before they were formally adopted by the Chinet board. Accordingly, Chinet breached ERISA's requirement that amendments to an employee benefit plan be formally adopted in writing.

**3. Failure to Disclose the Early Retirement Opportunities to Plan Participants.**

■ Dall also argues that Chinet breached its fiduciary duty because it failed to disclose material modifications made to the Plan in 1992, 1993, and 1994 to Plan participants. Plaintiff's Motion for Summary Judgment at 15–16. As part of this argument, Dall further complains that because Chinet failed to disclose the early retirement opportunities, employees were constructively denied their opportunity to protest the use of Plan assets to fund the benefits. *Id.* at 16–17. Furthermore, Dall contends that at least one employee who was eligible for the early retirement option was unable to assert his eligibility because he was unaware of the benefits. *Id.* at 17. Chinet concedes that it failed to disclose the 1992 amendments to plan participants. Defendants' Reply Memorandum in Support of its Motion for Partial Summary Judgment at 5. However, it asserts that it fulfilled these requirements for the 1993 and 1994 amendments when it distributed the *Your Benefits ... A Better Balance* and *1993 Early Retirement Window* brochures and the Amended Plan.

ERISA requires that a plan administrator furnish a summary description of a modification or change to participants and beneficiaries "not later than 210 days after the end of the plan year in which the change is adopted to each participant, and to each beneficiary who is receiving benefits under the plan." 29 U.S.C. § 1024(b)(1). Chinet fulfilled its notification requirements in regard to the 1993 and 1994 amendments to the Plan.

---

11. For example, a January 8, 1992, memorandum of the Benefits Committee enacted the 1992 early retirement program for nine employees of the Waterville plant, but in March of 1992, the Company described eligibility as all regular, full-time employees, contradicting the earlier statement. Plaintiff's Motion for Summary Judgment at 11. The version of the amendment as adopted in the 1987 Plan does not limit the program to Waterville plant employees. Amended Plan at § 5.4. Additionally, Dall argues that the 1993 amendment as adopted by the board of directors had an effective date of January 1, 1994, whereas the Amended Plan notes the window was effective as of June 1, 1993. *Id.*

On April 22, 1993, Chinet distributed the *Your Retirement Benefits ... A Better Balance* brochure to all participants in and beneficiaries of the Plan, informed them about the early retirement opportunity, and told them that they would receive more information if they were eligible. Plaintiff's Statement of Material Facts, Exhibits 3, 4. The company also distributed to eligible participants the brochure, *1993 Early Retirement Window*, that contained information about the early retirement benefits. *Id.* ¶ 7. This Court holds that by distributing the brochures describing the 1993 amendments in April of 1993, Chinet fulfilled the automatic disclosure mandate of section 1024(b)(1) regarding the 1993 amendments.[12] In regard to both amendments, Chinet automatically disclosed their contents within 210 days of the end of the year in which they went into effect. Accordingly, Chinet followed the proper disclosure protocol for the 1993 and 1994 amendments but admits it violated ERISA's disclosure requirement in regard to the 1992 amendments to the Plan.

### 4. Failure to Properly Authorize A Plan Administrator

■ Dall also contends that Chinet breached the terms of the Plan because it operated with an unauthorized plan administrator. Plaintiff's Motion for Summary Judgment at 18. Dall's argument is that Margaret Lee, the designated Corporate Benefits Administrator, is acting as the plan administrator and is not duly qualified because she is not a member of the Retirement Committee. The 1987 Plan provides that the Retirement Committee is the plan administrator. 1987 Plan § 12.1 ("general administration of the Plan shall be carried out by a Retirement Committee... which shall act as the 'plan administrator.' "). Under the Plan, the Retirement Committee has the authority "to delegate to one of its members the duties and responsibilities of plan administrator." *Id.* Dall points to memoranda in the record

signed by the three-member Retirement Committee that do not contain Margaret Lee's signature as proof that Margaret Lee is not a member of the Retirement Committee. Plaintiff's Statement of Material Facts, Exhibits 39, 40, and 41. This evidence is undisputed by Chinet and Chinet does not specifically respond to Dall's contention.

This Court finds that Lee was not a plan administrator acting without authority under the Plan. The Retirement Committee must appoint one of its own members as plan administrator. 1987 Plan § 12.1. It is undisputed that Lee is not a member of the Retirement Committee. However, the Plan permits the Retirement Committee "to appoint or employ individuals to assist in the administration of the Plan." 1987 Plan at § 12.3. There is no evidence that Lee acted without the authority of the Retirement Committee. Furthermore, Dall admits that Lee was administering the terms of the Plan "on behalf of the Plan Administrator." Plaintiff's Motion for Summary Judgment at 18. Finally, Dall does not point to any evidence that shows that Lee had any power beyond that of an employee assisting with the administration of the Plan. The only evidence of her role with the company is that she responded to Dall's information requests. Even viewing the evidence in Dall's favor, this Court finds that the Retirement Committee was the plan administrator and Lee was an employee hired to assist in the administration of the Plan. Accordingly, Chinet did not violate the Plan in this regard.

### 5. Failure to Properly Qualify the Trust Under the Internal Revenue Code

■ Finally, Dall complains that Chinet failed to act in a prudent manner by not assuring qualification of the Plan under the requirements of the Internal Revenue Code because the Plan Determination Letter filed by Chinet on March 31, 1995, contains nu-

---

12. Although Chinet was required to distribute the *1993 Early Retirement Window* brochure to Dall upon his request, it was not required to do so automatically under section 1024(b)(1). Labor regulations permit the use of separate summary descriptions for separate classes of employees as long as the descriptions adequately give notice of

the coverage of other classes under another summary. 29 C.F.R. § 2520.102.4. The brochure that was sent to Dall and the letter enclosed, told Dall about the early retirement benefits offered to eligible employees. Plaintiff's Statement of Material Facts, Exhibits 4, 5.

merous and substantial errors. Plaintiff's Motion for Summary Judgment at 12–14. Chinet denies that the Plan Determination Letter contains errors or that the trust is improperly qualified. Section 1104(a)(1)(B) of ERISA provides that "a fiduciary shall discharge his duties with respect to a plan ... with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use ...." 29 U.S.C. § 1104(a)(1)(B).

Specifically, Dall argues that Chinet provided misinformation in its application with the Internal Revenue Service for tax exempt status ("Tax Exempt Status Application"). Plaintiff's Statement of Material Facts, Exhibit 36. Dall argues that two errors were made in the application that resulted in an incorrect actuarial determination of the "average benefit test" which resulted in an incorrect favorable determination letter by the IRS. Plaintiff's Statement of Material Facts, Exhibit 37. The first alleged error is that Chinet failed to report to the IRS that an early retirement opportunity was offered to employees in 1993. The second error is that Chinet failed to note that Dall's Equal Employment Opportunity Commission filing was pending against the company.[13] Plaintiff's Motion for Summary Judgment at 13. Because this information was not provided to the IRS, Dall argues that the IRS determined that the Plan was qualified for tax exempt status on an incorrect factual basis. Chinet squarely disputes Dall's contention that the qualification application contained errors and argues that it is entitled to summary judgment as a matter of law because Dall has not shown that the trust is not properly qualified. Defendants' Motion for Summary Judgment at 7–9.

This Court need not sort through the alleged errors in the application for tax exempt status. Assuming the application contains the errors Dall contends, Dall has failed to present evidence on part of his contention—that the errors resulted in a faulty determination of Chinet's tax exempt status. In fact, all that Dall contends is that the errors resulted in "a questionable" favorable determination letter by the IRS and that qualification is not "assur[ed]." Plaintiff's Motion for Summary Judgment at 13. Dall has not presented evidence that demonstrates that Chinet acted in an imprudent manner that resulted in a faulty qualification of the trust. Consequently, he has failed to meet his burden at summary judgment in regard to this claim. The Court will grant summary judgment for Chinet on this part of the breach of fiduciary duty claim.

In sum, this Court finds that Chinet did not breach its fiduciary duty by providing an early retirement opportunity to designated employees based on age rather than length of service with the company. In addition, Chinet did not fail to meet its obligations under ERISA by operating with an unauthorized plan administrator. Nor has Dall proven that Chinet failed to qualify the trust. However, Dall managed to uncover several technical violations of ERISA during discovery regarding his discrimination claims. The record demonstrates that Chinet failed to properly amend the Plan in 1992 and 1994 in the manner required under ERISA and failed to disclose the material modifications made to the Plan in 1992. Consequently, Chinet breached ERISA's requirements.

## C. The Prejudice Requirement

The Court's inquiry into whether Chinet breached its fiduciary obligations, however, does not end with its finding that Chinet's actions constituted technical violations of ERISA. Evidence of Chinet's failure to comply with ERISA's procedural provisions, standing alone, is insufficient to entitle Dall to equitable relief. Generally, substantive remedies are not available under § 1132(a) for violations of ERISA's procedural requirements without a showing of harm, some significant reliance on, or possible prejudice flowing from, these violations. *Veilleux v. Atochem North America, Inc.*, 929 F.2d 74, 76 (2d Cir.1991); *Govoni v. Brick-*

---

**13.** Dall also asserts that he never received notice that the company had filed for its qualification in March 31, 1995. He claims that he lost his right to comment. However, as Dall himself notes in the same paragraph, a former employee is not an "interested party" to whom the regulations require notice. 26 C.F.R. § 1.7476–1(b).

layers, Masons, Plasterers International Union of America, 732 F.2d 250, 252 (1st Cir.1984); United Paperworkers International Union v. International Paper Company, 777 F.Supp. 1010, 1019 (D.Me.1991) (citing cases).

■ This Court holds that the prejudice requirement for equitable relief applies to failures of a fiduciary to properly amend ERISA plans and notice violations. In United Paperworkers, this Court held that the plaintiffs were not entitled to injunctive relief for breach of fiduciary duty arising out of the defendant's failure to provide a summary plan description, to file annual reports, and to maintain a claims procedure, where the plaintiffs failed to show how the procedural violations prejudiced them. United Paperworkers, 777 F.Supp. at 1019; see also Ackerman v. Warnaco, Inc., 55 F.3d 117, 124 (3rd Cir.1995) (substantive remedies are generally not available for violations of ERISA's reporting and disclosure requirements except where the plaintiff can demonstrate the presence of extraordinary circumstance); Bachelder v. Communications Satellite Corp., 837 F.2d 519, 522–23 (1st Cir.1988) (plaintiffs must show prejudice from or reliance on ambiguous plan document to recover under ERISA); Boucher, 13 F.Supp.2d at 99 (substantive remedies are generally not available for violations of ERISA's reporting and disclosure requirements except where the plaintiff can demonstrate prejudice); Risch v. Waukesha Title Co., Inc., 588 F.Supp. 69, 72 (E.D.Wis.1984) ("A plaintiff has no right to an equitable remedy for procedural violations under ERISA unless he has thereby been prejudiced."); Hillis v. Waukesha Title Co., Inc., 576 F.Supp. 1103, 1109 (E.D.Wis.1983) ("A mere procedural violation may not give rise to a substantive remedy. Therefore, a showing of injury may be essential to the plaintiff's right to equitable relief, for there may be some violations of ERISA's reporting and disclosure provision that do not result in cognizable injury."). Accordingly, the record must demonstrate that Dall was prejudiced or harmed in some way by Chinet's technical ERISA violations in order to be granted summary judgment. Likewise, if the record demonstrates, viewing it in the light most favorable to Dall, that he was not prejudiced by Chinet's violations of ERISA, Chinet is entitled to summary judgment.

Dall has failed to produce sufficient evidence that he was prejudiced or harmed because of Chinet's failure to properly enact the early retirement opportunities or to notify Dall of the early retirement option offered in 1992. Dall is not, and was not, entitled to these benefits. Even if the 1992 early retirement opportunity had been disclosed to Dall or offered only to Waterville employees as originally drafted, Dall was not qualified to participate. The early retirement opportunities offered in 1992, 1993, and 1994 were available only for employees aged sixty in 1992 and fifty five in 1993 and 1994. Amended Plan at §§ 5.4(b)(2), 5.5(b)(2), 5.6(b)(3)(A). Dall was fifty two years old in 1994. Furthermore, this Court has already determined that the early retirement opportunities did not discriminate against Dall because of his age. Order Affirming the Recommended Decision of the Magistrate Judge (Docket No. 11). Because Dall was not qualified for the benefits that were subject of the amendments, he is hardpressed to demonstrate that he was prejudiced or injured because they were not properly enacted and he was not told of their existence.

Because he can not assert that he was denied benefits to which he himself was entitled as a consequence of Chinet's failure to properly amend the Plan, Dall presents several alternative arguments that he suffered harm. First, Dall argues that the early retirement opportunities caused him injury because they are funded by Plan assets. Plaintiff's Response to Defendants' Motion for Partial Summary Judgment at 5. He contends that over time, several million dollars of Plan assets have been expended to fund the early retirement opportunities. Id. Even assuming that this would be actionable under ERISA, Dall has not provided evidence that he was denied any benefits to which he was entitled. Moreover, Dall admits that the Plan was overfunded. Plaintiff's Motion for Summary Judgment at 14.

In addition, Dall complains that even if he was ineligible for the early retirement opportunities, he suffered harm due to their infor-

mal adoption and Chinet's lack of notice regarding the 1992 amendment because he was unable to protest their adoption. However, Dall knew that the 1993 and 1994 early retirement opportunities existed and did complain that they were discriminatory when he filed a suit with the Maine Human Rights Commission. Defendants' Reply Supporting its Motion for Partial Summary Judgment at 11. Moreover, as already discussed, *supra* II(B)(1). Chinet was acting as an employer engaged in plan design when it provided the early retirement opportunities. Therefore, it was free to amend the Plan in any manner consistent with ERISA which does not prohibit discrimination in the provision of welfare benefits. Thus, Dall was not harmed because he was unable to protest the early retirement benefits.

Dall also argues that because the amendments were improperly adopted and were not effective when implemented, participants who elected the early retirement option received benefits for which they were not properly eligible. Plaintiff's Motion for Summary Judgment at 14. Furthermore, Dall submits evidence that one eligible employee was not given the chance to participate because the option was given only to Waterville employees despite the fact that it pertained to all employees according to the Amended Plan.[14] Dall's assertion that fellow employees were denied benefits to which they were eligible is immaterial to the question of whether he himself was, in fact, prejudiced.

This Court finds that Dall's allegations of prejudice are unpersuasive. Dall has failed to show that Chinet's technical violations of ERISA resulted in injury, harm, or prejudice to him. Accordingly, this Court finds that Dall is entitled neither to injunctive relief under 29 U.S.C. § 1132(a) nor to reasonable attorney's fees.

### III. CONCLUSION

Accordingly, the Court ORDERS that Plaintiff's Motion for Summary Judgment on Count V be, and it is hereby, **GRANTED** to

the extent that the Court has found that Defendants' actions violated 29 U.S.C. § 1132(c). The Court declines to order any statutory penalties based on this violation. The Court **ORDERS** that Defendant's Motion for Summary Judgment on Count VI be, and it is hereby, **GRANTED**. The Court **ORDERS** that Plaintiff's Motion for Summary Judgment on Count VI be, and it is hereby **DENIED**.

---

14. Dall outlines this alleged injury in more detail in his response to Defendants' Motion for Partial Summary Judgment. He asserts that in 1992, only nine participants were included in an early retirement offering and 690 participants were excluded. He alleges that there are twenty five other eligible employees who should have been offered these benefits.